Thank you, Your Honor. Thank you for the show. Of course, I'm very pleased to report I'm going to continue to preserve the incidents that I'm going to talk about. Your Honor, um, you know it's in your beliefs that a defendant is measured as being across the border. I think it's important for you to see this. Both Your Honor, there are some similarities, but let me state a few. First of all, there's a technical point here. I'm sure you'll agree with me on this. Judge Collins was rather explicit about the authority of the sentence. He gave the sentence in which the defendant was held for a long time. It was a 1,041 sentence. So watch the way that I'm going to speak to you. Again, I'm going to speak to each of you. For instance, I'm going to introduce you to a sort of a nomenclature, and I think he said it's been a long time, but it's one of the most fortification things you can perform as a court of execution. And that even the jury in the hearing did not believe him. And the College Court's decision in 1944 is to adjourn, which is the jury deliberations, where, for sure, it comes right out of the court, and it comes right out of the sentence as an error in the execution of the statute. Yeah? Well, Your Honor, Judge Collins said, Your Honor, that the execution of the execution should be restricted. And so, you know, I don't know if the purpose of the execution is that he couldn't change it. I do not understand what you are trying to say, that he committed the crime. I'm sorry. I really don't. But because he was a law student, because he was a nurse student, he's not answering the case that I understand, so there are misplaced units of time that are not there. The execution is in order, Your Honor. The execution is in order, Your Honor, so you can't hear most parts of the jury's instruction, which is contagious. And it creates what? I mean, I'm not interested in objecting to the jury's instruction. The jury's instruction comes out three quarters of a screen. It's essentially an answer that comes out of this instruction, and I thought that you'd sort of suggest that you're not really objecting to the fact that this instruction is not in your position, isn't in your position. No objection is decided by trial, Your Honor. This is what we've come to understand. I could have been more clearer. I mean, you haven't raised the issue. So essentially what you're saying is that you still don't know what the instruction said, what the actual crime was, and the actual crime requires us to solve anything that wasn't answered in this execution, you see? In fact, in this case, for instance, what we have is the jury can't do this. The government can't do anything. First of all, this guy in Washington was estranged. He chose the most mysterious occurrence, looking around him. And this guy was in his studio. He made his music. He walked across the windows in his studio, and he told me that he was in his studio. And then when the police were looking for him before, they found that he was 20 years old, and he passed away within 30 months, the last time we heard from him. He's currently back in his home. See, we are involved in this. It was last time. I must be there for the last time. He was convicted for being in a rain-washed house. He's one such person. In fact, there's a whole team to that. He did find relatives of his family, which at college was quite hard since he was 30 months in prison. So, he had the experience that his speech was, I think, somewhat of a quest to destroy many other resident citizens in the city, which is, you know, the United States government did many things to protect the situation. In fact, there are times when we can testify when we have a charge of slandering the presidency. But to think that it's such a charge, just to talk about superseding it, that was very late in the case, and there were days before responding to the original charge, when we were answering, you know, that it was a sustained charge. So, it is possible, however, that we should stand by some of the laws and the rules. And then there seems to come the question of whether this jury, in light of this type of question, was able to really do enough to sort of continue to go further. If this is in general such, we have substantial staffing across the border. I think the primary response to the point is, whether or not there's evidence to support him in his defending the case, which is something that follows the case, but not at least if there is a very good, if there's evidence to support it, then I guess you can't discharge him, and it's just the staffing along the border that is being discharged. Of course, I don't know how that would be considered free from official restraint. It is greatly prejudicial, so it's not necessary. Your Honor, if there is a question, I'm just going to be plural. Staying with your official restraint, should a person stay too long, understanding the first question, should a person stay too long within official restraint, so as to be exempt from remission? I don't see that as being a long-staffed question. The question is, would it not be interesting to know whether or not there was always an official restraint? I'm sorry? Would it mean that he was staying there and that there was such a thing as a 100% remission restraint? I don't think that, Your Honor. I don't think that. In the comments, there were major issues with proceedings, and I don't think Mr. Franklin, or Franklin himself, or Mr. Price, or anybody else, in the comments, I don't think he did mention that there was an official restraint. If he did, Your Honor, I do believe that there was some counsel that was reported for all agents to be exempted. There were some cameras and we had a few little blind spots, but the spreadsheet of his spending disorder is of these sources. And the concern, the only concern, Your Honor, with restraint was that you could not get settled that way. It was difficult to see the problem again, but there's a squalor to getting all qualified to drop that should vary since there may be more. It's sort of like the person jumping over the head of the party and putting the phone to the person and saying, well, you know what? I don't remember. He's sort of suffering. I'm assuming he's doing good. He did cross the border to be able to continue to be chased by the police. So you're saying that's the same thing as the intent to leave the border area but also the border area. If the person is prosecuted for being in the border area and he's trying to attempt to continue to be chased, you don't know how that's going to work. Yes, I mean, I think it's particularly irrelevant that free and professional restraint is a development of the intent that may be affected by that in terms of generating the message. The fact is he was never free from restraints in return against quite so professional and government and the force that is police harassment ever since he was in the military and the impact on the security of this particular process even if they believed that he had attempted to leave the border area to himself probably because he had a young son who was unwell but they simply suspected that they had entered into this possibility. It serves quite a very great many positive and positive and positive and positive points to identify the issue of professional restraint. Free from this restraint becomes a very simple part of this case. Often there are successions of these assessors. There are so many successful people who assess the nature of this border checkpoint that they are they're not satisfied with their compliance with the evidence that was used to try to simply not support it. It's very important to find your brother talking to people face-to-face in the border area where we have communications such as teleconferencing that it is no longer an operational challenge. And it's still like that. It's still a theory. But there's not a personal political standard necessary to secure professional conditions for our citizens. So we need to be very      And we need to be very careful about what we're doing. And we need to be very careful about what we're doing. And also we need to be very careful about what we're doing. And we need to be very careful about what we're doing. And we need to be very careful about what  doing. And we need to be very careful about what we're doing. And we need to be very careful about what we're doing. And  we need to be very careful   we're    need to be very careful about what we're doing. And we need to be very careful about what we're doing. And we need to be very  about what we're doing, and what we are doing.  might be hearing this broadly now, but this is true too. And so keep that in mind. And  need   very about   doing, and we need to be very about what we're doing, and we need to be very about what we're doing, and  need to be  about what we're doing, we need to    what we're doing, and doing, and we need  be  about what we're doing, and we need to be very about what we're doing, and we need to be  about to be    we're doing, and we and  need to be very
judges: Gould, Berzon, Sessions